IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>v.<br><br>LANDMARK DODGE, INC., AND LANDMARK SOUTH, INC.,<br><br>                Defendants. | CASE NO. 4:22-cv-00614-BP<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), plaintiff Equal Employment Opportunity Commission states the following as its First Amended Complaint against defendants Landmark Dodge, Inc. and Landmark South, Inc.

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of sex and retaliation, and to provide appropriate relief to Charging Parties Jacqueline McKinney and Janette Barron and other aggrieved individuals who were adversely affected by such practices. As alleged with greater particularity below, Defendants Landmark Dodge, Inc. and Landmark South, Inc., denied employment opportunities to qualified female applicants seeking car sales positions and qualified male applicants seeking online pre-sales, cashier, clerical, and other office positions, and subjected Barron and McKinney to an unlawful hostile work environment and constructively discharged their employment in retaliation for their opposition to such unlawful employment practices.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.  Venue is proper in this Court pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Missouri.

## PARTIES

4.  Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5.  Defendant Landmark Dodge, Inc. is a Missouri corporation that was incorporated in 1993 and has not been terminated.

6.  Defendant Landmark South, Inc. is a Missouri corporation that was incorporated in 2013 and has not been terminated.

7.  Since at least May 17, 2017 until at least May 2019, defendants Landmark Dodge, Inc. and Landmark South, Inc.:

    a.  had the same corporate officers, Kenneth Stephen Fletcher as President and Secretary and Steven Douglas Fletcher as Assistant;

    b.  had the same board of directors, made up of a single director, Kenneth Stephen

Fletcher;

c. had the same registered agent, Vincent F. Igoe, Jr.;

d. had the same sole owner, Kenneth Stephen Fletcher;

e. had the same General Manager, Steven Douglas Fletcher;

f. had the same Human Resource Department;

g. had the same employee handbook, in which "Landmark Dodge Inc. / Landmark South Inc." is defined as "Company";

h. had the same health insurance plan available to full-time employees; and,

i. shared the same website, www.landmarkdodge.net.

8. Since at least May 17, 2017 until at least May 2019, Defendants Landmark Dodge, Inc. and Landmark South, Inc., (jointly "Landmark" or "Defendants"), while being nominally separate business entities, have continuously been either a "single employer" or a "joint employer" for all purposes relevant to the claims asserted herein. *See, e.g., Jarred v. Walters Indus. Electronics, Inc.,* 153 F.Supp.2d 1095 (W.D. Mo. 2001).

9. Since at least May 17, 2017 until at least May 2019, Landmark has continuously been an employer engaged in an industry affecting commerce with fifteen (15) or more employees, within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

10. More than thirty days prior to the institution of this lawsuit, Janette Barron and Jacqueline McKinney timely filed charges of discrimination with the Commission, alleging violations of Title VII by Landmark.

11. The Commission sent Landmark timely notice of the charges filed by Barron and

McKinney.

12. On February 12, 2021, the Commission issued to Landmark a Letter of Determination finding reasonable cause to believe Landmark violated Title VII.

13. The Commission invited Landmark to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

14. The Commission engaged in communications with Landmark to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

15. The Commission was unable to secure from Landmark a conciliation agreement acceptable to the Commission.

16. On June 28, 2021, the Commission issued a Notice of Failure of Conciliation to Landmark.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF FACTS**

18. Since at least May 17, 2017 until at least May 2019, Landmark operated three automotive dealerships: one at 1900 South Noland Road, Independence, Missouri 64055; one at 1857 South Noland Road, Independence, Missouri 64055; and one at 7820 East 171st Street, Belton, Missouri 64012.

19. In September 2017, Landmark hired Barron and McKinney for two new human resources positions. Barron held the position of Human Resources Director and McKinney held the position of Recruiter.

20. Among other duties, Barron and McKinney were responsible for recruiting applicants for sales, service, mechanic, office, and other positions at all of Landmark's locations, and they expanded Landmark's recruiting efforts to bring in more qualified applicants. They also

pre-screened applicants and referred qualified applicants to the relevant hiring managers who would interview and select which applicants to hire.

21. During Barron and McKinney's employment, Landmark's owner, sales managers, and sales staff were all male. According to Landmark's owner, as of 2019, Landmark had not employed a female salesperson in 15 years.

22. Landmark's owner and sales managers had hiring authority for sales, Business Development Center (BDC), cashier, clerical, and other office positions.

23. Landmark's owner and sales managers regularly expressed stereotypical views of male/female roles in the workplace to Barron and McKinney. Examples of this sex-based animus include, but are not limited to, statements such as:

   a. Landmark is "a very man-driven environment";

   b. Landmark does not hire women for sales positions;

   c. women and gay men are unable to handle sales positions;

   d. women do not make good salespeople because, unlike men, they do not get the respect necessary to be successful at car sales;

   e. training a woman for a sales position is a waste of the company's time since women end up quitting because it is not "a clerical job"; and

   f. Landmark does not hire men for office positions, including BDC (where employees engage in online pre-sales of automobiles but do not handle actual sales), cashier, clerical, and other office positions.

24. Landmark's owner instructed Barron and McKinney during their employment to question female applicants about their marital status and if they have children, which, the owner stated, would cause them to take too much sick leave.

25. Landmark's owner had in fact subjected Barron and McKinney to such questions during their own job interviews with Landmark prior to their employment. Examples of this include, but are not limited to, the following:

   a. Landmark's owner grilled McKinney about her marital status, why she was getting a divorce, how she was paying her bills and supporting her children, and who would care for her children while she was at work; and

   b. Landmark's owner asked Barron whether she was married, what her husband did for a living, and whether her children were still at home.

26. Barron and McKinney personally observed Landmark managers asking female applicants about their marital status and if they have children and using other sex-based questions and criteria when making hiring decisions. Landmark managers did not generally ask male applicants about their families or personal lives during interviews.

27. Landmark managers repeatedly denied employment to female applicants for sales positions because of their sex. Examples of this include, but are not limited to, the following:

   a. a Landmark sales manager refused to hire a female applicant for a sales position, telling her that females do not do well in the vehicle sales market and that she would be better suited for a receptionist job;

   b. a Landmark sales manager refused to hire another female applicant for a sales position, telling her that women "sit at their desks" and that she was "the perfect height" to sit at a desk; and

   c. a Landmark sales manager refused to even meet with a qualified applicant for a sales position, who had driven over an hour to get to her interview, when he found out the applicant was female.

28. Not only did Landmark fail to hire female applicants for sales positions, it refused to transfer existing employees to available jobs because of their sex. For example, one female hired for a BDC position asked if she could be considered for an opening on the sales floor. The BDC manager informed her that only men work in sales or service positions, women are not allowed to work in sales, and this has "always been the case" at Landmark.

29. Landmark also repeatedly denied employment to male applicants for BDC, cashier, clerical, and other office positions, sometimes steering them instead to sales positions. For example, a Landmark manager refused to hire a male applicant for a BDC position, telling him that the BDC job was a "woman's position" and only women were offered those jobs.

30. Since at least May 17, 2017 until at least May 2019, Landmark hired men for sales positions but did not hire women for sales positions, even though some female applicants were more qualified than some male applicants who were hired.

31. Since at least May 17, 2017 until at least May 2019, Landmark hired women for BDC, cashier, clerical, and other office positions but did not hire men for such positions, even though some male applicants were more qualified than some female applicants who were hired.

32. Qualified female applicants for sales positions were selected at a rate disproportionate to their availability in the applicant pool, and male applicants in BDC, cashier, clerical, and other office positions at Landmark were selected at a rate disproportionate to their availability in the applicant pool.

33. Since at least May 17, 2017, until at least May 2019, there was a statistically significant disparity in the number of women hired for sales positions compared to the number of men hired for such positions, based on the available applicant pool.

34. Since at least May 17, 2017, until at least May 2019, there was a statistically

significant disparity in the number of men hired for BDC, cashier, clerical, and other office positions compared to the number of women hired for such positions, based on the available applicant pool.

35. Sales positions, on average, were and are compensated at a significantly higher rate than BDC, cashier, clerical, and other office positions.

36. Throughout their employment, Barron and McKinney repeatedly opposed Landmark's discriminatory hiring practices and informed the owner and managers of the illegality of their actions. In response, Landmark's owner and managers repeatedly told Barron and McKinney that Landmark would not stop engaging in its discriminatory practices and repeatedly instructed Barron and McKinney to engage in and carry out Landmark's discriminatory practices.

37. Landmark managers with hiring authority subjected Barron and McKinney to increasing pressure over the course of their employment to stop referring qualified female applicants for sales positions and qualified male applicants for BDC, cashier, clerical, and other office positions.

38. In January 2018, McKinney and Barron met with Landmark's general manager and attempted to discuss with him Landmark's discriminatory practices. McKinney and Barron described the many directives they had received from Landmark's owner and managers to discriminate against applicants based on sex, and that Landmark's actions toward male and female applicants were unlawful. In response, the general manager became angry, denied the allegations, yelled, and called both McKinney and Barron "liars." He also specifically threatened McKinney with termination of her employment and, at one point, even threatened to call the police to escort her off Landmark's property. In addition, he informed both Barron and McKinney that he could not change the owner's behavior, therefore implying that he could not change the discriminatory

practices within Landmark.

39. Based on the general manager's threats, the retaliatory hostile work environment, and the discriminatory practices they observed and in which they were instructed to participate, McKinney and Barron believed they could not report discrimination, engage in non-discriminatory hiring practices, or adhere to their own ethical standards without adverse action by Landmark, up to and including termination of their employment.

40. As a result of the threats to their employment, and the intolerable, materially adverse conditions to which they were subjected, McKinney resigned the day after the confrontation with the general manager in January 2018, and Barron resigned as soon as she could find another job, in April 2018.

## STATEMENT OF CLAIMS

### COUNT I

**(Failure to Hire Female Applicants for Sales Positions Based on Sex)**

41. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

42. Since at least May 17, 2017, Landmark has rejected or otherwise failed to hire qualified female applicants for sales positions because of their sex in violation of Sections 703(a)(1) and (2) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and (2).

43. The unlawful employment practices described above deprived qualified female applicants equal employment opportunities because of their sex.

44. The unlawful employment practices described above disproportionately exclude female applicants from employment and constitute a pattern or practice of discrimination based on sex.

45. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to the federally protected rights of female applicants.

46. As a direct and proximate result of the unlawful employment practices described above, qualified female applicants suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT II

### (Failure to Hire Male Applicants for Office Positions Based on Sex)

47. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

48. Since at least May 17, 2017, Landmark has rejected or otherwise failed to hire qualified male applicants for BDC, cashier, clerical, and other office positions, because of their sex, in violation of Sections 703(a)(1) and (2) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and (2).

49. The unlawful employment practices described above deprived qualified male applicants equal employment opportunities because of their sex.

50. The unlawful employment practices described above disproportionately exclude male applicants from employment and constitute a pattern or practice of discrimination based on sex.

51. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to the federally protected rights of male applicants.

52. As a direct and proximate result of the unlawful employment practices described above, qualified male applicants suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and

inconvenience.

## COUNT III

### (Retaliatory Hostile Work Environment Against McKinney)

53. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

54. Landmark engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), by subjecting McKinney to a hostile work environment in retaliation for her opposition to Landmark's unlawful hiring practices.

55. The unlawful employment practices described above deprived McKinney of equal employment opportunities and otherwise adversely affected her status as an employee in violation of Title VII.

56. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to McKinney's federally protected rights.

57. As direct and proximate result of the unlawful employment practices described above, McKinney suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT IV

### (Retaliatory Hostile Work Environment Against Barron)

58. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

59. Landmark engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), by subjecting Barron to a hostile work environment in retaliation for her opposition to Landmark's unlawful hiring practices.

60. The unlawful employment practices described above deprived Barron of equal employment opportunities and otherwise adversely affected her status as an employee in violation of Title VII.

61. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to Barron's federally protected rights.

62. As direct and proximate result of the unlawful employment practices described above, Barron suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT V

**(Retaliatory Constructive Discharge Against McKinney)**

63. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

64. Landmark engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), by constructively discharging McKinney in retaliation for her opposition to Landmark's unlawful hiring practices.

65. The unlawful employment practices described above deprived McKinney of equal employment opportunities and otherwise adversely affected her status as an employee in violation of Title VII.

66. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to McKinney's federally protected rights.

67. As direct and proximate result of the unlawful employment practices described above, McKinney suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT VI

### (Retaliatory Constructive Discharge Against Barron)

68. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

69. Landmark engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), by constructively discharging Barron in retaliation for her opposition to Landmark's unlawful hiring practices.

70. The unlawful employment practices described above deprived Barron of equal employment opportunities and otherwise adversely affected her status as an employee in violation of Title VII.

71. The unlawful employment practices described above were done intentionally and with malice or reckless indifference to Barron's federally protected rights.

72. As direct and proximate result of the unlawful employment practices described above, Barron suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

### **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants Landmark Dodge, Inc. and Landmark South, Inc., their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on sex and from retaliating against employees who engage in protected activity.

B. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to institute and carry out policies, practices, and programs which provide equal employment opportunities for

female applicants and male applicants, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole female applicants for sales positions and male applicants for BDC, cashier, clerical, and other office positions harmed by the practices described above by providing appropriate back pay with prejudgment interest to each, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to rightful-place hiring of qualified female applicants and qualified male applicants.

D.     Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole female applicants for sales positions and male applicants for BDC, cashier, clerical, and other office positions harmed by the practices described above by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and other out-of-pocket expenses, in amounts to be determined at trial.

E.     Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole female applicants for sales positions and male applicants for BDC, cashier, clerical, and other office positions harmed by the practices described above by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.     Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to pay female applicants for sales positions and male applicants for BDC, cashier, clerical, and other office positions harmed by the practices described above punitive damages for the malicious and reckless

conduct described above, in amounts to be determined at trial.

G. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole McKinney by providing back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement or front pay.

H. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole McKinney by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and other out-of-pocket expenses, in amounts to be determined at trial.

I. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole McKinney by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

J. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to pay McKinney punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial.

K. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole Barron by providing back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement or front pay.

L. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole Barron by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and other

out-of-pocket expenses, in amounts to be determined at trial.

M. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to make whole Barron by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

N. Order Defendants Landmark Dodge, Inc. and Landmark South, Inc. to pay Barron punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial.

O. Grant such further relief as the Court deems necessary and proper in the public interest.

P. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

LISA MORELLI
Acting Associate General Counsel

ANDREA G. BARAN, MO Bar # 46520
Regional Attorney
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103

Phone: (314) 798-1914
Email: andrea.baran@eeoc.gov

LAUREN W. JOHNSTON
Assistant Regional Attorney
Oklahoma Area Office
215 Dean A. McGee Ave, Ste. 524
Oklahoma City, OK 73102
Phone: (405) 666-0379
Email: lauren.johnston@eeoc.gov

*/s/ Luke R. Hertenstein*
LUKE R. HERTENSTEIN, W.D. Mo. Bar # 59890
Trial Attorney
Kansas City Area Office
400 State Ave, Suite 905
Kansas City, KS 66101
Phone: (913) 359-1812
Email: luke.hertenstein@eeoc.gov

ATTORNEYS FOR PLAINTIFF EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION

## Certificate of Service

I certify that on January 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Luke R. Hertenstein*
LUKE R. HERTENSTEIN, W.D. Mo. Bar # 59890